For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL AND SUSAN C. CLARK,

                Plaintiffs,

    v.

UNITED STATES OF AMERICA, the
DEPARTMENT OF TREASURY by its
agency, the INTERNAL REVENUE
SERVICE,

                Defendant.

_____/

No. CV 11-00471 RS

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

## I.    INTRODUCTION

Plaintiffs filed this action seeking a refund of $1,053,586.00 in taxes they paid, along
with $278,034.81 in interest.  Plaintiffs allege the IRS incorrectly determined they had a long
term capital gain for 2005.  Defendant brought a Motion for Summary Judgment before the close
of discovery, but the parties were permitted to submit a supplemental Opposition and Reply to
that Motion after discovery closed.  For the following reasons, the Motion is granted.

II.     BACKGROUND

In preparation for retirement in 2004, plaintiff Michael Clark sold his stock in his company Rael & Letson to the company's employees for $7,706,250 through an Employee Stock Ownership Plan ("ESOP") with payment over 10 years.  On the Clarks' 2003 federal income tax return, they reported their basis in the 56,250 shares to be $6,525 and the gain realized to be $7,699,725.  To defer recognition of the gain, plaintiffs then purchased Qualified Replacement Property ("QRP") in the form of Floating Rate Notes ("FRN") using a loan obtained from Deutsche Bank.  Three Notes had a face value of $1,900,000, and one had a value of $2,000,000.

In 2005, plaintiffs transferred the loan and accompanying collateral to Optech Limited ("Optech"), an affiliate of Derivium Capital, LLC, in exchange for $6,930,000 in cash, pursuant to a Master Loan Security and Financing Agreement ("MLSFA").  Four Loan Schedules setting forth the essential terms of the transaction were attached to the MLSFA.  The loans were for 27 and 29 years and were non-callable, non-recourse, with no margin required, and a highly restricted payment to the principal during the term of the loans.  At maturity, plaintiffs could either pay off the balance of the loan and receive the securities or their cash equivalent back, or they could walk away under the non-recourse provision, thereby surrendering the securities. Allison Skinner, an agent of Derivium Capital and Optech represented to plaintiffs that the transaction was a loan.  Each quarter, plaintiffs paid Optech $2,367.75 in net interest on the loan in excess of the interest paid by the FRNs, which plaintiffs deducted on their tax returns as investment interest.  They continued to receive Quarterly Account Statements and Invoices seeking payments of interest for about three years following the execution of the documents. Optech did not hold the FRNs as collateral, but authorized the sale of the four FRNs, including principal and interest.

In 2007, the United States filed an action for a permanent injunction against Optech, amongst others, for transactions similar to the one entered into by plaintiffs.  The Court found that the 90% loan transactions constituted sales of securities for purposes of tax code treatment,

as opposed to bona fide loans.  *United States v. Cathcart, et al.*, 2009 WL 3103653 (N.D. Cal. Sept. 22, 2009).

In February 2008, plaintiffs received a Revenue Agent's Report asserting that they had sold the FRNs to Optech which subsequently sold them on the market, and that the transaction with Optech was a sale, a characterization plaintiffs dispute.  Even were the transaction deemed a sale, plaintiffs insist they are entitled to a "theft loss" of $791,309.75 for the year 2005. Plaintiffs filed a Complaint in 2011 seeking a refund of $1,053,586.00 in taxes paid along with $278,034.81 in interest.  Defendant brings this Motion for Summary Judgment asserting that the transaction was a sale as a matter of law and that plaintiffs' action should thus be dismissed with prejudice.

## III.     LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  *See also Celotex*, 477 U.S. at 323.  A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255.

### B.  Loan versus Sale

For federal tax purposes, the difference between a loan and a sale is material, as taxable income includes the gain derived from the sale or other disposition of property.  *See* I.R.C.

§§61(a)(3), 63m 1001(c).  When determining the proper characterization of a transaction, the substance, not the form, of the transaction is controlling.  *See Harbor Bancorp v. Comm'r of Internal Rev.*, 115 F.3d 772, 779 (9th Cir. 1977).

Courts consider numerous factors in evaluating whether a transaction involves a sale for tax purposes.  One such consideration is whether sufficient benefits and burdens of ownership have passed to the alleged buyer.  *See Grodt & McKay Realty v. C.I.R.*, 77 T.C. 1221, 1236 (T.C. 1981).  This "is a question of fact which must be ascertained from the intention of the parties as evidenced by the written agreements read in light of the attending facts and circumstances."  *Id.* at 1237 (citing *Haggard v. C.I.R.*, 24 T.C. 1124, 1129 (T.C. 1955). *Affd.* 241 F.2d 288 (9th Cir. 1956)).  Eight factors are relevant to that analysis: (1) whether legal title passes; (2) how the parties treat the transaction; (3) whether an equity was acquired in the property; (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser to make payments; (5) whether the right of possession is vested in the purchaser; (6) which party pays the property taxes; (7) which party bears the risk of loss or damage to the property; and (8) which party receives the profits from the operation and sale of the property.  *Id.*

Courts have defined a loan as an express or implied agreement where one person advances money to the other who agrees to repay it according to terms such as time and interest.  *Welch v. Comm'r of Internal Rev.,* 204 F.3d 1228, 1230 (9th Cir. 2000).  There must be an unconditional obligation on the respective parties to repay the money and to secure repayment.  *Haber v. C.I.R.*, 52 T.C. 255, 266 (1969) *aff'd sub nom. Haber v. C. I. R.*, 422 F.2d 198 (5th Cir. 1970).  In considering the validity of a purported loan, courts will look at whether the transaction as a whole indicates a genuine intention to create a bona fide debt.  *See Geftman v. Comm'r of Internal Rev.*, 154 F.3d 61, 76 (3rd Cir. 1998).

IV.   DISCUSSION

Defendant moves for summary judgment on the grounds that, as a matter of law, plaintiffs' transaction with Optech involved a sale for tax purposes.[1]  In support of its motion, defendant relies upon several recent cases in which courts have found purported "loans" to be sales for tax purposes.  In *United States v. Cathcart*, 2009 WL 3103652 (N.D. Cal. Sept. 22, 2009), the court found that a 90% loan transaction entered into with Derivium and Optech constituted a sales of securities for the purposes of the tax code.  In so finding, the court noted that legal title had transferred to Derivium for the term of the loan, Derivium sold the shares transferred on the open market, that 90% of the sale amount had remitted to the customer, the customer was prohibited from repaying the loan prior to maturity and not required to pay interest prior to maturity, and finally, that the customer had the option to walk away from the loan entirely.  *Id*. at *1.

In *Sollberger v. C.I.R.*, T.C. Memo. 2011-78 (T.C. 2011), the petitioner sold stock pursuant to an ESOP and entered into a non-recourse loan program with Optech.  The Tax Court found that Derivium did not hold the FRNs as collateral, but rather obtained the benefits and burdens of the FRNs when they passed from petitioner.  *Id.* at *3-4.  Accordingly, the court found that the transaction constituted a sale for tax purposes and granted summary judgment in favor of the government.  The Ninth Circuit affirmed the summary judgment, concluding the economic reality of the Optech-Sollberger transaction constituted a sale.  *Sollberger v. Comm'r of Internal Rev.*, 691 F.3d 1119, 1124 (9th Cir. 2012).  In *Shao v. C.I.R.*, T.C. Memo. 2010-189 (T.C. 2010), petitioner entered into a three-year non-recourse loan with Derivium at 10.5% interest.  Derivium reserved the right to assign, sell or transfer the stock without notice to petitioner, and petitioner could not prepay or receive any dividends on the stock.  *Id.* at *2.  The court concluded that petitioner had sold her stock, triggering the capital gain tax.  *Id.* at *6.  The

---

[1] Plaintiffs oppose the motion, pointing to nineteen facts that they contend are in dispute.  Upon review of those allegedly disputed facts, it is clear that the circumstances relevant to the transaction are not in question, it is merely how those facts are interpreted that is in dispute. Thus, no material facts remain and disposition of defendant's motion for summary judgment is appropriate.

only remaining question was whether the failure report was an honest mistake such that a penalty

would be inappropriate. *Id.* The court determined that, because petitioner had legitimate non-tax

reasons to structure the deal in the way she did – to reduce risk – she had proved her defense to

the accuracy-related penalty. *Id.* at *7.

Likewise, in *Calloway v. C.I.R.*, 135 T.C. 26 (2010), the court applied the eight *Grodt*

factors to a 90% Derivium loan in concluding that the transaction was indeed a sale.  The court

found it unconvincing that Derivium issued quarterly statements that appeared as if it still held

the stock as collateral. *Id*. at 31.  Rather, the court focused on the fact that the petitioners had not

reported dividends earned in their tax returns, that petitioners had no personal liability to pay the

principal or interest to Derivium, and that Derivium received all rights and privileges of

ownership when the stock was transferred to it. *Id.* at 38.

Plaintiffs first respond to this litany of case authority by trying to draw certain

distinctions.  They note that, unlike plaintiffs, the petitioner in *Cathcart* was prohibited from

repaying the loan before maturity.  While true, the terms of Schedule A are such that it is

unlikely any client would choose to repay in advance.  Prepayment is only allowed every three

years, one year notice of intent to prepay must be given, the loan and all net interest must be paid

in full, and a prepayment fee of 7% of the unpaid principal amount of the loan is incurred.   Thus

the substance of this term reflects a transaction that only superficially acted as a loan.  Plaintiffs

further show that, unlike in *Cathcart*, they were required to pay interest.  As discussed more fully

below, however, courts have found the differences in payment of interest to be unpersuasive.

Indeed, it is possible to obtain an interest free loan.  Plaintiffs next distinguish *Calloway* on the

basis that the taxpayer *knew* Derivium would sell the transferred stock.  This distinction is also

unpersuasive, as plaintiffs signed the MLFSA, clearly authorizing the sale or other disposition of

the transferred collateral.  Finally, plaintiffs argue that, unlike the taxpayer in *Sollberger*, they

did not exchange an appreciated asset for cash.  It is unclear, however, why the distinction

between an appreciated and an unappreciated asset should be determinative in the disposition of

plaintiffs' case.

Plaintiffs make the further argument that, at the time Kevin Wiley, a Revenue Agent, conducted his audit of the Clarks' tax return, he had no knowledge of the distinction between the different loan programs Derivium offered. As a result, plaintiffs posit, case precedent involving Derivium is not persuasive. They note in particular that their MLFSA contained a condition precedent to the clause that Optech had the right to "assign, transfer, pledge, repledge, hypothecate, rehypothecate, lend, encumber, short sell, and/or sell outright some or all of the securities during the period covered by the loan." MLFSA ¶5. That condition provided that "Optech and the Lender shall return the same Collateral, adjusted if equities, for any and all stock splits, conversions, exchanges, mergers, or other distributions to the Client at the end of the Loan Term as the client delivers to Optech and the Lender." *Id.* Plaintiffs use this term to argue that not all Derivium client contracts are the same. Nevertheless, such a clause was addressed in the *Calloway* case. The court there concluded that, "[a]t best the master agreement gave petitioner an option to repurchase IBM stock from Derivium at the end of the 3 years" *Calloway*, 135 T.C. at 36. It went on to note that this option depended on Derivium's ability to acquire the stock in the year the option was exercised. *Id.* Despite this contingency clause, the court unhesitatingly concluded the transaction was a sale. Accordingly, such a condition precedent in plaintiffs' Agreement is insufficient to set it apart from precedent.

Plaintiffs respond that defendant cannot rely on these cases to assert collateral estoppel, or issue preclusion, as plaintiffs were not a party to the prior cases. *See Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir. 1992). Plaintiffs, however, point to no case finding a transaction similar to that at issue here to be a loan rather than a sale.

Next, plaintiffs contend the deficiency assessed by the IRS should be given no deference, as Revenue Agent Wiley admitted he did not have the Clarks' MLFSA in his possession at the time he issued his decision. The assessment is, they therefore conclude, arbitrary, capricious, and erroneous. While better practice would have been to review the document specifically pertaining to plaintiffs prior to making an assessment, as the above discussion indicates, Agent

Wiley did not make an unfounded judgment.  The substance of the transaction is consistent with that of a sale, not a loan.

The same conclusion is reached after weighing the eight *Grodt* factors courts consider in determining whether a transaction constituted a sale or a loan.  Plaintiffs place much weight on the role that the intention of the parties plays in this analysis.  While true that intent is an element to be considered, the analysis must take into account the totality of the circumstances.  *See Arevalo v. C.I.R.*, 124 T.C. 244, 251-52 (2005) *aff'd,* 469 F.3d 436 (5th Cir. 2006) ("Whether the benefits and burdens of ownership with respect to property have passed to the taxpayer is a question of fact that must be ascertained from the intention of the parties as established by the written agreements read in light of the attending facts and circumstances") (citing *Grodt*, 77 T.C. at 1237).

*a. Legal Title*

The MLFSA states that the "Collateral is the asset of the client and is not subject to the claims of any creditors of Optech and the Lender." MLFSA ¶5.  However, the Agreement also provided that Optech would be free to sell or otherwise dispose of the Collateral during the Loan Term, and that Optech would have the "right to receive and retain the benefits during the Term of a Loan advanced hereunder."  *Id.*  It further provides that the Agreement is not enforceable until "hedging transactions have been initiated for that loan."  MLFSA ¶15.  This condition makes clear that Optech had plans to sell the FRNs immediately upon receipt, before the deal was closed.  Thus, Optech had all rights associated with legal title.

*b. How the parties treat the transaction*

The MLFSA characterizes the transaction as a loan and the FRNs as collateral.  Despite this, Optech sold the underlying FRNs shortly after obtaining them from plaintiff.  Although they profess ignorance that Optech had sold the stock, the agreement Clark signed makes clear that he authorized such action.  This case is distinguishable from *Calloway* in that plaintiffs were required to pay interest above that of the dividends received on that stock, but this payment alone is insufficient to change the characterization of the transaction from a sale to a loan.  *See Landow*

For the Northern District of California

*v. C.I.R.*, T.C. Memo 2011-177, fn 32 (T.C. 2011) (finding the difference between paying quarterly interest and interest only at the end of the loan term as in *Calloway*, to be immaterial). Indeed, any "net interest," the difference between the gain on the collateral and the interest owed on the loan, would not be due unless and until plaintiffs sought return of the collateral at the maturity date or upon a pre-payment election.

Moreover, as discussed above, plaintiffs transferred complete control of the FRNs to Optech during the course of the loan with limited right to recover them prior to maturity. Optech, likewise, had no recourse against plaintiffs as the "loan" was non-recourse. Notwithstanding how the parties claim to have viewed the transaction, their behavior is more consistent with that of a sale than a loan.

*c.   Equity interest*

Optech had the right to retain all profits made on the FRNs.  It thus obtained any increase in the stocks' "equity."

*d.   Present obligations on buyer and seller*

The Agreement required plaintiffs to transfer their stock to Optech.  It was not until Optech could enter into hedging agreements that the loan was finalized and Optech was required to remit 90% of the value of the stock to plaintiffs and Annual Net Interest would be determined. Plaintiffs, therefore, incurred an obligation even before the alleged loan was issued.  Once the FRNs were sold, however, Optech also retained a present obligation.

*e.   Right of possession*

Pursuant to the MLFSA, Optech obtained the right to possess and control the FRNs during the term of the alleged loan.  It exercised that right in electing to sell the stock.

*f.   Property taxes*

This factor is inapplicable to the current transaction.

*g.   Risk of loss or damage*

Plaintiffs were entitled to keep the entire $6,930,000 regardless of the performance of the FRNs.  Because the transaction contemplated a non-recourse loan, plaintiffs were able to

surrender the stock and walk away from the deal, leaving them with no risk of loss should the stock fall in value.  If, however, the stock appreciated greatly, plaintiffs had the option of reacquiring that stock from Optech at the price of the original loan amount.  Optech, therefore, bore the risk of loss if plaintiffs chose to exercise their option at maturity.  In a traditional debtor-creditor relationship, the only risk of loss borne by the creditor is the risk that the borrower does not repay the loan.  The volatility of the market plays no role.  Under the present agreement, in contrast, it is exactly when the stock does well and the alleged buyer chooses to repay the loan, that Optech loses value on the transaction.  Because Optech bears the risk of loss, this factor weighs heavily in favor of a sale, rather than a loan.

Finally, plaintiffs argue that, if the FRNs were sold, they are entitled to "theft loss" return.  To qualify for a theft loss deduction, a taxpayer must prove: (1) the occurrence of a theft under the laws of the jurisdiction in which the loss occurred; (2) the amount of the theft loss; and (3) the day the taxpayer discovered the theft loss.  *Vincentini v. C.I.R.*, T.C. Memo 2009-255 (T.C. 2009).  Plaintiffs contend these factors involve factual questions that must be resolved by a jury and thus not appropriate for resolution on summary judgment.

In *Landow v. C.I.R.*, T.C. Memo 2011-177 (T.C. 2011), the taxpayer argued that, if the transaction was a sale, it would constitute a theft and therefore an involuntary conversion under Internal Revenue Code §1033(a).  The *Landow* court concluded that no theft loss had occurred because Landow had voluntarily entered into the transaction with Derivium in which he transferred the FRNs in exchange for cash.  *Id*.  In contrast, the court in *Raifman v. C.I.R.*, T.C. Memo 2012-228 (T.C. 2012), applied California law to determine whether a three-year Derivium loan was actually a theft.  The *Raifman* court distinguished the facts of that case from prior cases in that the taxpayer had attempted to exercise his right to the return of the collateral after the maturity date.  *Id*. at *8.  The stock was not returned, costing the taxpayer millions of dollars.  *Id*. at *8-9.  Accordingly, the court found that genuine issues of material fact remained, precluding the grant of summary judgment in favor of the government.

The present case is distinguishable from *Raifman* in that plaintiffs did not seek to have the FRNs returned to them.  The loans have not yet reached maturity, and there is no evidence to suggest plaintiffs triggered the limited prepayment option under their Agreement.  Thus, any loss that may have resulted from plaintiffs' agreement with Optech has not yet occurred.  Moreover, just as in *Landow*, plaintiffs knowingly entered into the transaction with Optech.  As the Ninth Circuit stated in *Sollberger*, "the scheme only appears to be a theft in hindsight because it didn't allow [plaintiffs] to evade taxes."  691 F.3d at 1125.  Because plaintiffs have not raised a question as to whether they suffered a loss above and beyond that of the unexpected taxes they were required to pay, summary judgment on their theft loss claim must be granted in the defendant's favor.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.


IT IS SO ORDERED.


Dated: 12/26/12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE